A mortgage of personal property intended to cover future responsibilities and advances not expressed in the instrument, but resting in a parol engagement, is void *pro tanto* as against creditors.

Where a mortgage of personal property gives a false account, and is vague and indefinite as to the amount of indebtedness ; where the state of the accounts between the parties is not known until the property is taken by a creditor; where a whole stock in trade is mortgaged and

### DIVVER & GUNTON vs. McLAUGHLIN.

ERROR from the New-York common pleas. McLaughlin sued Divver & Gunton in an action of trespass for taking and carrying away ten pipes of brandy, ten pipes of gin, (and sundry articles of merchandize which were enumerated,) the weights, measures and scales of a grocery store, &c. The defendants pleaded the general issue, and gave notice of justification under a judgment and execution in favor of Divver against one Thomas Stephens, Gunton acting as a deputy sheriff.

On the trial of the cause it appeared that the plaintiff was surety for the rent of certain premises occupied by Stephens in the city of New-York, and that on 20th August, 1824, to secure the plaintiff from the responsibilities he had and might come under for Stephens, and for crediting him with liquors in carrying on his business as a grocer, Stephens executed to the plaintiff a mortgage of his goods and chattels then in the house occupied by him, consisting, besides household furniture, of the ordinary contents of a retail grocery store, such as eight standing casks and their contents, 200 bushels of potatoes, three firkins of butter, 400 weight of ham and smoked beef, &c., and the weights, measures and scales belonging to the store ; to be void on the payment of $800 on or before the 1st January, 1825, according to the terms of a certain note, and in default of payment, authorizing the mortgagee to take and sell the goods, &c. By an express provision in the mortgage, until default of payment, the mortgagor was

the mortgagor remains in possession continuing his business, selling the articles transferred, and continuing so to do until the mortgage becomes absolute, and for upwards of two years and a half after, without any accounting to the mortgagee, and the knowledge of the mortgage is confined to one or two individuals, the mortgage will be held fraudulent and void as against creditors, however honest may have been the intentions of the parties. Upon such a state of facts, it is a question *for the court* and not for the jury to decide whether the mortgage is valid or void.

If a mortgagee, by the circumstances of the case, would be precluded from pursuing the property mortgaged into the hands of a *bona fide* purchaser, he is equally debarred from setting up his claim against a judgment creditor who has levied upon the property by virtue of an execution.

to remain in quiet and peaceable possession of the goods, &c. and the full and free enjoyment of the same. Stephens testified that at the date of the mortgage he was indebted to the plaintiff in the sum of $100 or $150 ; that the plaintiff was under responsibilities for him ; that he had continued in the plaintiff's debt, and the plaintiff had continued under such responsibilities until the seizure of his property by the defendants, at which time he was indebted to the plaintiff in the sum of $581 73 ; that the property mortgaged had never been taken possession of by the plaintiff, but the same had remained under his own controul, and he had continued to conduct his business, and rendered no account of his sales or receipts to the plaintiff ; that in January 1825, when the mortgage became absolute, the plaintiff, in consequence of the misfortunes of the witness, permitted him to remain in possession ; that the liquors and groceries in the store had pretty much changed since the giving of the mortgage, but the fixtures (as he called them), viz. eight standing casks, two iron bound casks, twelve kegs and the weights and scales remained the same and were levied upon by the defendants. These articles were valued by another witness at $57 50.

Divver, on the 30th August, 1827, obtained a judgment against Stephens for $223, and on the same day issued an execution and levied on the goods in the store of Stephens, which were sold at public vendue and produced $136. It did not appear that there was any other judgment against Stephens except that of Divver, nor did it appear any person other than one who drew and another who witnessed the execution of the mortgage knew that plaintiff had any claim upon the property until he forbade the seizure under the execution.

The defendants claimed that the plaintiff be called, unless he produced further evidence, but the presiding judge, the Hon. JOHN T. IRVING, being of opinion that the evidence was sufficient to go to the jury refused to nonsuit the plaintiff and submitted the case to the jury, who found a verdict for the plaintiff for the sum of $45. The defendants having excepted to the opinion of the court, brought a writ of error.

NEW-YORK,
May, 1829.

Divver
v.
McLaughlin.

*C. O'Connor*, for plaintiff in error. The mortgagor remaining in possession two years and a half after the mortgage became absolute, selling the property as his own, and rendering no account to the mortgagee, was not only prima facie, but conclusive evidence of fraud. (1 *Esp. R.* 205. 3 *Cowen*, 178. 9 *Johns. R.* 350. 1 *Cranch*, 310.) The facts being conceded, fraud is a question of law. (7 *Cowen*, 732.) The only reason assigned for the continuance of the possession after default in payment, is the commisseration of the mortgagee for the misfortunes of the mortgagor, which, it is trusted, will never be approved as a sufficient reason accounting for the continuance of possession. The transaction was secret, known only to two individuals besides the parties. In the case of *Bissel* and *Hopkins*, (3 *Cowen*, 187,) the lien of the creditor was notorious, and no one could be deceived. The pretence for the mortgage was false; the assignor acknowledged a debt of $800, when only $100 or $150 was due from him.

*D. Graham*, for defendant. A mortgage of personal property is good and valid. (8 *Johns. R.* 446. 2 *Cowen*, 246. 3 *id.* 166. 4 *id.* 461. 7 *id.* 290.) And in *James* v. *Morey*, (2 *Cowen*, 246,) the court say that such mortgage is good, not only for existing debts and liabilities, but also "for future advances." As to the secrecy of the transaction, neither the law nor practice requires publicity, and if a mortgage is good for future advances, then, although but $150 was due at the date of the instrument, it appears that at the time of the seizure, the debt due the plaintiff was $580.

The continuance of the possession might be explained. The same circumstances existed which induced to the mortgage; the parties considered it in force for current advances, and they had a right so to consider it. Here was not such a conceded state of facts as to raise merely a question of law. That happens only where a *prima facie* case of fraud is established. The plaintiff offered proof to repel the presumption of fraud, and whether he succeeded or not was a question of fact, and not of law.

*By the Court,* SAVAGE, Ch. J. There is less difficulty in laying down the rule of law in cases of this description, than in the proper application of it to the circumstances of each case. The possession of personal property by the vendor or mortgagor, inconsistent with the face of the deed, is *prima facie* evidence of fraud, but subject to explanation. In other words, such possession is, " except in special cases and for special reasons, to be shewn to and approved of by the court, fraudulent and void as against creditors." The mortgage in this case, after forfeiture without explanation, must be held fraudulent and void as against creditors. The only real question, therefore, is, whether the reasons shewn why the possession was not changed, are such as can be approved of by *the court,* under the special circumstances. The counsel for the defendant in error contends, that this is a question for the jury. Upon a conceded state of facts, fraud is a question of law. There is, in this case, no dispute about facts; it is a question for the court, therefore, to decide whether the mortgage was valid or void as against creditors. However honest the intentions of the parties may have been, their acts were such as, in my judgment, cannot be sustained against creditors of the mortgagor. The mortgage is for $800 ; whereas the indebtedness did not exceed $150, and was probably not over $100—the mortgagor did not know the amount; the mortgagee was security for the rent, but to what amount does not appear ; and he was to make future advances, but how much does not appear. Nothing appears in this mortgage to shew that it was intended as a security for liabilities incurred, or advances to be made ; and it has been decided that a mortgage is no security for subsequent advances made on the strength of a parol engagement. (1 *Mer.* 7. 2 *Cowen,* 293.) Under what circumstances a mortgage of chattels personal, to secure future advances expressed in the deed, would be valid, is a question not necessary now to be discussed. The mortgage, then, upon its execution, was void as against creditors, upon the principle just stated, for so much as was intended to cover responsibilities and advances. There are other circumstances in this case, which, in my

NEW-YORK
May, 1829.

Divver
v.
McLaughlin.

opinion, cannot be approved of by the court.   1. The deed itself gives a false account of the transactions it recites.   It holds out that the plaintiff was a creditor of Stephens for $800, when in truth he was so for only $150.   2. The parties did not seem to know the state of accounts between them, till the levy was made on Divver's execution.   3. Stephens' whole stock in trade was mortgaged, and the mortgagor was permitted to sell it without rendering any account.   This state of things continued after the mortgage became forfeited, from 1st January, 1825, till August, 1827, without any possession taken, or accounting of the parties, or any knowledge of these circumstances by any one, except by one person who drew, and by another who witnessed the mortgage.

In *Paget* v. *Perchard*, (1 *Esp.* 205,) a Mrs. Spencer, who kept a public house, gave the plaintiffs a bill of sale of her liquors, and all her effects and furniture, and an agent of the plaintiffs took possession, but permitted Mrs. S. to sell liquors that day without accounting for it.   An execution was levied on the next day, and the bill of sale was held fraudulent. The case of *Wordall* v. *Smith*, (1 *Campb.* 332,) was very similar in its circumstances, and was decided in the same way.   In the case of *Benton* v. *Thornhill*, (7 *Taunt.* 149,) the plaintiff's agent took possession of the mortgaged property, and the mortgagor was permitted to sell some of it, and exercise other acts of ownership, but the sale was held valid, being shewn to be for a bona fide debt.

There are many cases in this country where mortgages of personal property were considered valid, though the possession remained in the mortgagor.   But I have seen none like the present.   The case of *Bissell* v. *Hopkins* goes as far as any in this court.   There, however, there was an exact accounting between the parties, and a re-accounting but a few days before the levy ; the claim of the mortgagee was publicly known, and the reason of leaving the mare in possession of the mortgagor was temporary, and to enable him to transact his business as a public officer ; but in that case the mortgagor was not permitted to sell any of the articles mortgaged, and appropriate the money to his own use.   There was no

secrecy ; no misrepresentation of the true state of the accounts between the parties.

NEW-YORK, May, 1829.

It is very clear, and so it seems to have been understood at the trial in the court below, that the mortgage was void as to all the property except the standing casks. Is there any reason why the mortgage is good as to them, and not as to their contents ? Surely the mortgagor had the same right to sell them, and take the money, that he had to sell the liquors ; and had he done so, the mortgagee could no more pursue them in the hands of a *bona fide* purchaser, than he could the 200 bushels of potatoes which were included in the mortgage, and which it was no doubt intended should be sold. A judgment creditor whose execution is levied, stands on similar ground with a bona fide purchaser, and has the same right to hold the property of his debtor.

To sanction a transaction like this, would open a door to frauds innumerable, and to an extent incalculable.

Judgment reversed. Venire de novo to N. Y. Com. Pleas.