### Levy and another *v.* Welsh and others.

---

W. and C. being indebted to L. and H. on notes for goods sold and for money lent, proposed, to mortgage all their present and future stock and goods, in case of a renewal and of a further loan ; stating their perfect solvency and the great advantage which would accrue to their business by such loan. L. and H. consented ; and the mortgage was made out, which assigned all the goods and stock in trade, W. and C. then owned or which they might at any time before the final payment of the debt own in whatever store, warehouse or other place the same might be situate : but W. and C. were to keep possession until default. About two months afterwards W. and C. made an assignment to R. of all their goods and stock, in trust for creditors, making R. a preferred creditor; Held, that the mortgage to L. and H. should hold good for so much of the property embraced by the assignment to R. as was in hand or in store at the time the mortgage was given and to such as might have been since purchased and paid for out of its proceeds, but no further ; and it was declared that so much of the property and of its avails could be followed.

The complainants, Myer Levy and Ebenezer Henriques, were the holders of two notes made by the defendants,

James Welsh and John Campbell, as co-partners, drawn in favor of the complainants, one dated New-York 12th March 1831, for one thousand one hundred and ninety-nine dollars and two cents, payable on the twelfth day of September one thousand eight hundred and thirty-one and the other, dated 9th May, 1831, for seven hundred and thirty-two dollars and seventy-eight cents, payable on the ninth day of December in the same year. These notes were given to the complainants for goods sold and delivered to Welsh and Campbell. On the sixth day of June in the same year the latter left with the former goods invoiced by them at seven hundred and thirty-seven dollars and ninety-eight cents, to be sold and the proceeds to be credited on the said two notes.

On the fifteenth day of June one thousand eight hundred and thirty-one the complainants advanced to Welsh and Campbell two thousand dollars, to take up an acceptance falling due on that day; and for which sum Welsh and Campbell gave their three notes, at sixty days, ninety days and four months, for seven hundred and three dollars and sixty-six cents, six hundred and seventy-six dollars and ninety-nine cents and six hundred and seventy-nine dollars and ninety-nine cents; and on the fifth day of August thereafter Welsh and Campbell left with the complainants goods invoiced at six hundred and seventy-five dollars and seventy-three cents, to be sold and the proceeds applied on these notes. On or shortly before the thirteenth day of the same August, Mess. Welsh and Campbell solicitted an extension of the three last mentioned notes and also asked for a loan of fifteen hundred dollars, representing that it would enable them to complete their purchases of a stock of goods, saying they were perfectly solvent and would be thereby enabled to do business to great advantage; and they offered, if the complainants would comply with their request and further renew their two notes, falling due on the twelfth day of September and the ninth day of December, for six months, that they would secure the whole by a mortgage or hypothecation of all their goods and stock in trade which they then owned or might thereafter own until the final

1834.

LEVY
v
WELSH.

payment of the whole debt. The complainants assented to this proposition; and thereupon and on the thirteenth day of August one thousand eight hundred and thirty-one, Welsh and Campbell delivered to them their three notes of that date in favor of the complainants, one for the sum of twelve hundred and five dollars and thirteen cents payable on the first day of January then next, another payable on the first day of February for twelve hundred and twelve dollars and nineteen cents and a third for twelve hundred and eighteen dollars and fifty-seven cents payable on the first day of March, (being the amount of the three notes hereinbefore mentioned dated the 15th of June 1831,) and also of the said sum of fifteen hundred dollars loaned with interest until the maturity of the notes. The complainants delivered up the old notes and advanced the sum of fifteen hundred dollars and received thereupon a mortgage or hypothecation of goods. This document recited the indebtedness; and thereby all the goods, stock in trade &c. in the store of Welsh and Campbell, No. 80, Chartres Street, New Orleans, which they then owned or which they might at any time before the final payment of the said debt own in whatever store, warehouse or other place they might be situate, were mortgaged to the complainants. Possession was not to be taken until default was made in payment of some one of the notes; but upon the first default the complainants had power to enter and take possession of the mortgaged property and sell the same and apply the proceeds to the payment of the notes due and also those to become due, making a discount of the interest for the time they had to run. In pursuance of the agreement, the complainants renewed the note falling due on the twelfth day of September one thousand eight hundred and thirty-one for six months. The complainants had been informed by Welsh and Campbell that, at the date of the mortgage, they had a large quantity of goods in New-Orleans and also in the city of New-York.

Shortly after the first day of October one thousand eight hundred and thirty-one, the complainants were informed that, by an instrument dated the first day of October Welsh

and Campbell assigned all their goods and stock in trade in the store in Chartres Street or elsewhere to the defendant Robert Rutherford, in trust to pay certain creditors named in a certain schedule A. thereto annexed, amounting to eighteen thousand dollars, and in the next place to pay the creditors named in a schedule B. exceeding in amount thirteen thousand dollars. The complainants were put down in schedule A. for fifteen hundred dollars and in schedule B. for four thousand one hundred and nine dollars and sixty-six cents. Rutherford claimed to be a preferred creditor to the amount of fifteen hundred dollars.

The above facts appeared in the bill; the prayer of which was, that Welsh and Campbell, and Rutherford, might account for, and deliver up to the complainants, all the goods and merchandize which Welsh and Campbell owned at the date of the mortgage or which they might at any time since have owned, and that the goods received by Rutherford as aforesaid, and those left with the complainants as aforesaid, might be sold, and the proceeds applied to the payment of their debt with interest and costs. Also, for further relief; and for an injunction.

The defendants, James Welsh, John Campbell and John Rutherford, filed a joint and several answer. And after admitting the leading facts before set forth, the defendants, Welsh and Campbell, admitted that they did not inform the complainants of the assignment to Rutherford until the seventh day of October. That having become unable to pay their debts, and being desirous of appropriating their property to the payment thereof, and to protect some claims which they considered of a higher description, they executed, on the first day of October, one thousand eight hundred and thirty-one, an assignment of their property. They all alleged that the assignment was made in good faith: but Welsh and Campbell admitted that it was intended to defeat the said mortgage, they being satisfied that they had done wrong in executing it without having disclosed the fact to their other creditors. Rutherford denied all knowledge of the mortgage until after the assignment was executed; and he insisted that the mortgage was void as against him and the other creditors, and also, that possession of the goods had

never been delivered to the complainants. The defendants admitted that the assignment professed to pass all the goods of Welsh and Campbell, wherever the same were situated, and amongst others, those in Chartres street, New-Orleans. That the goods mentioned in the mortgage were much changed and altered before the assignment, some having been sold and new ones added, but, with this exception, the goods assigned were the same as those mentioned in the mortgage. Rutherford admitted that he claimed all the goods of Welsh and Campbell, including those deposited with the complainants for sale ; he claimed to have the same delivered up to him ; and he admitted his having demanded possession thereof of the complainants, and having claimed an account of those sold. The defendants denied that the goods, left with the complainants for sale, were invoiced too high, or that any loss ought to be suffered on them. They admitted that the goods assigned were insufficient to pay the debts ; that no notice of the said mortgage was given to Rutherford until the seventh of October ; that no notice thereof was given to any other creditor of Welsh and Campbell's, nor to their agent in New-Orleans, but the execution of the said mortgage was studiously kept a secret. That Rutherford, subsequent to the sale thereof, sold goods to Welsh and Campbell, which were sent to New-Orleans, and which he would not have done if he had known of the mortgage—and such also was the case with other creditors. Rutherford admitted he had received from New-Orleans the stock in trade of Welsh and Campbell. The defendants admitted that the note of Welsh and Campbell, which fell due on the first day of January, one thousand eight hundred and thirty-two, remained unpaid, and that the complainants had applied to be put into possession of the goods of Welsh and Campbell or for payment of their debt ; also, that Rutherford claimed the property and would have sold the same and distributed the proceeds according to the assignment, if he had not been enjoined. A copy of the assignment was annexed to the answer.

In the month of March, one thousand eight hundred and thirty-two, an order was entered for the sale of the goods in

the hands of Rutherford, and for payment of the proceeds into court.

Replications were filed; and proofs were gone into: but it is deemed unnecessary to set forth the testimony—the leading charges in the bill were made out.

Mr. *F. B. Cutting*, for the complainants.

Mr. *W. P. Hawes*, for the defendants.

THE VICE-CHANCELLOR:—The mortgage executed by the complainants and under which they claim, is, ·· *facie*, fraudulent and void as against creditors: the execution of it not having been accompanied by a delivery of the possession of the goods. It is competent, however, for the complainants to repel this presumption l y proof of consideration, and the *bona fides* of the transaction. The burthen of proof was upon them; and I think they have succeeded in shewing that the mortgage was founded upon a good and valuable consideration, namely, an advance of money a ·⊣ a renewal and forbearance of notes—as well as that their motives were fair and honest.

It was consistent with the object and intention of the parties at the time, that the goods should remain in the possession of Welsh and Campbell. They held out the expectation of being able to go on with their business and pay their debts. In this, however, they failed; and then they made the assignment to Rutherford: but it was before the mortgage had become forfeited according to the condition and before the complainants could enter and take possesion of the property. It is very different from the cases of *Divver* v. *M'Laughlin*, 2 Wend. 596, and *M'Lachlan* v. *Wright*, 3 Wend. 348, where the mortgagors remained in possession an unreasonable length of time, exercised acts of ownership long after the mortgages were forfeited, and where, from circumstances, it might easily be inferred the mortgages were intended as mere cover, and made for dishonest purposes. No such circumstances appear in the present case.

Although I consider the complainants' mortgage not liable to be entirely destroyed, yet I am not satisfied that it can be

*1835.*

LEVI
*v.*
WELSH.

*27th July.*

allowed as effectual beyond the goods which the mortgagors had in store or on hand at the time of giving it. The purport of it is, to cover all they might subsequently acquire or have on hand. If this effect were given to it, great injustice might be done to those who sold them goods on credit without any notice of the existence of such an incumbrance. A mortgage in this way might be productive of the grossest fraud. It is in proof in this cause that the defendant, Rutherford, sold to Welsh and Campbell, goods on credit, and lent them money after the mortgage was given, and without knowing of its existence. I shall, therefore, restrict the operation of this mortgage to so much of the property, embraced by the assignment to Rutherford, as was on hand or in store at the time the mortgage was given and to such as may have been since purchased and paid for out of its proceeds.

The goods which the mortgagors owned at the time and which are included in the mortgage and the produce of those specific goods invested in others may be followed; *Bucknal v. Roiston*, Prec. in Ch. 285 ; and the present mortgage is not to be effectual beyond this.

An account must be taken of these goods ; and the complainants are entitled to have them applied to the payment of the notes for which the mortgage was given as a security —while any surplus will belong to Rutherford, the assignee, to be held by him under the trusts of the assignment.

The complainants will be entitled to their costs of this suit out of the fund arising from the mortgaged goods : but not against the defendant Rutherford personally.