104 356
108 319
104 356
110 475

WILLIAM H. BRACE ET AL. v. JOHN BERDAN ET AL.

*Chattel mortgages—Advances—Fraud—Burden of proof.*

1. Plaintiffs, as mortgagees, replevied the mortgaged property from attaching creditors of the mortgagor. On the trial the testimony tended to show that the mortgage was given to secure an existing indebtedness and certain advances to be made to the mortgagor, but these facts did not appear upon the face of the mortgage. The court instructed the jury that the mortgagees had no right to place on file an instrument which bore upon its face a false statement as to their claim. And it is held that the jury would naturally infer from the language used that the mortgagees had no legal right to incorporate in their claim anything more than said existing indebtedness, and that for this reason it was error to refuse, on the request of the mortgagees, to charge further that if the jury should find

that the mortgagees agreed, at the time they took the mort-
gage, to make said advances, and that the remainder of the
sum secured by the mortgage was a valid, existing indebtedness
due the mortgagees, the taking of the mortgage for the amount
so to be advanced would not affect its validity.

:2. In such a case the burden is upon the attaching creditors to
show fraud in the transaction between the mortgagor and
mortgagees.

Error to Alpena.    (Kelley, J.)     Argued November 21,
1894.    Decided March 19, 1895.

Replevin.    Plaintiffs bring error.     Reversed.    The facts
are stated in the opinions.

*J. D. Turnbull* and *George B. Greening,* for appellants.

*I. S. Canfield* and *C. E. Williams* (*D. E. Thomas,* of
counsel), for defendants.

MONTGOMERY, J.    I think there was error in the sub-
mission of this case to the jury. It appears that plaintiffs,
through their agent, received a mortgage from Alexander
R. McKenzie, covering his stock of goods, amounting to
$7,500. There was due plaintiffs at the time $4,600, and
there was testimony tending to show that the mortgage
was received as security for this sum, and for $2,900,
future advances to be made in goods to McKenzie. The
circuit judge charged the jury:

"It appears from the evidence here, and I think I may
say to you that there is no contention about it,—it is con-
ceded,—that the actual indebtedness was about $4,600, the
actual indebtedness to Phelps, Brace & Co., on the 4th
day of January. It is conceded that this mortgage was
made to cover an amount of $2,900 in excess of that.   *
*    *    It is not controverted here but that Mr. Greening
was acting for them, as their attorney and agent, in secur-
ing this mortgage;    *    *    *    and if he, in this trans-
action, either with or without their knowledge or consent,
secured an illegal lien, or attempted to secure this mort-
gage for the purpose of covering up the property of Mc-

Kenzie, and placing it beyond the reach of other creditors, or for the purpose of hindering and delaying other creditors, the plaintiffs would be bound by his action.     *     * * And I charge you, gentlemen of the jury, upon this branch of the case, that the giving of this mortgage, a mortgage which appears to be absolute upon its face, for an indebtedness of $7,500, a mortgage which is sweeping in its terms, and covers the entire property of McKenzie of a certain class, and which undertakes to cover all property of such class which may be acquired by him in the future, the giving of such mortgage, and the receiving of it by the plaintiffs, would constitute a badge of fraud. It would be a circumstance which, standing unexplained, would be, at least, a badge of fraud. Parties have a right to secure their legitimate and honest indebtedness; and they have a right and under the laws of this State they may take a mortgage or any other means of securing their indebtedness. If they take a chattel mortgage, the law requires, in order that it may be notice to other people who may be interested in the property of the mortgagor, that it be filed. The filing is for a purpose. It is for the purpose of giving persons who are interested in the debtor's property notice of the true condition of his business, and of the property upon which the mortgage is placed; and I say to you that, unexplained and standing alone, the fact of taking a mortgage for $2,900 more than their actual indebtedness would be a badge of fraud. And if it was accomplished, if it was done for the purpose of enabling McKenzie to keep his other creditors from asserting their rights and enforcing their claims, it would be an actual fraud, and would render the instrument void as to other creditors who had existing claims then against McKenzie. Now, you understand this proposition. This question of whether it was fraudulent or not as to other creditors is a question of fact for you, to be determined from the evidence in this case, and from all the surrounding circumstances.     *     *     *

"Now, this mortgage is the basis of the claim of the plaintiffs, and it becomes their duty and the burden is upon them of establishing the fact that it was *bona fide*, and taken in good faith, and not as a means of preventing other creditors from enforcing their claim. The burden is upon them to show it in this case, they deriving their right and their claim through this instrument,— this mortgage."

In another place the court said:

"It was the duty of Phelps, Brace & Co., when they sought to secure their claim, to take such an instrument as when placed upon file would show a true state of facts. They had no right to put upon file an instrument which bore upon its face a false statement of the condition of their claim; and this circumstance you have a right to consider in determining the question as to the character of this mortgage."

Plaintiffs' counsel requested the court to charge the jury that—

"If the jury find that the plaintiffs, at the time they obtained their mortgage from McKenzie, agreed to advance, in money or merchandise, to said McKenzie, the amount of the note given to said McKenzie at the time of making said mortgage, and the balance of said mortgage was a valid, existing indebtedness due plaintiffs, then the taking of this mortgage for the extra amount of said note would not affect the validity of said mortgage."

This instruction was refused, and its equivalent is not embraced in the charge. We think this was error. The strong language employed by the court in asserting that the plaintiffs had no right to put on file an instrument which bore upon its face a false statement of the condition of their claim would very naturally lead the jury to suppose that they had no legal right to incorporate in their claim any more than the sum then constituting an existing indebtedness from McKenzie to the plaintiffs.

I also think it was error to charge the jury that the burden was upon the plaintiffs to negative fraud in the transaction. Fraud is never presumed, and the burden should never be imposed upon a party to show affirmatively that no fraud exists in a transaction. While the fact that the mortgage was given for a greater sum than the amount due is a circumstance which may be taken into consideration by the jury, and while admittedly, if it is made for a greater amount than the indebtedness owing, for the

purpose of hindering or delaying creditors, it amounts to fraud in law, yet I do not understand that the burden of proof shifts. Such seems not to have been the view of the circuit judge, but he states that the burden of proof is upon the plaintiffs in the case, "they deriving their right and their claim through the mortgage." I think it is not the rule of law that a person deriving his claim through an instrument of conveyance or a security has the burden of proof to show that the instrument is not fraudulent.

The judgment is reversed, and a new trial ordered.

McGRATH, C. J., LONG and HOOKER, JJ., concurred with MONTGOMERY, J.

GRANT, J. (*dissenting*). Plaintiffs, living in Detroit, had a chattel mortgage upon a stock of goods of one McKenzie, living in Alpena. Their actual claim was $4,600, while the mortgage was $7,500. McKenzie was also indebted to the defendants in the sum of $1,100, and to other creditors in the sum of $1,800. The mortgage was absolute upon its face, reciting that McKenzie was justly indebted to them in the sum above named, evidenced by a promissory note of even date, payable April 5, the mortgage being dated January 4 previous. Before the giving of the mortgage, plaintiffs had placed their claim in the hands of Mr. Greening, an attorney at Alpena. He testified that he made repeated attempts to induce Mr. McKenzie to secure plaintiffs' claim; that he drew up a chattel mortgage for the actual amount of the indebtedness, and presented it to him for execution; that he refused to sign it, and desired to give a mortgage to cover future advances; that he wanted one for about $3,000 more than he owed plaintiffs, because the giving of the mortgage would ruin his credit, and he could not obtain goods from any one else. The mortgage in question was finally executed, and

Mr. Greening executed a promissory note for $2,900, due April 5, payable at the office of the Alpena Banking Company, and signed by plaintiffs, "per George B. Greening, their attorney." No other consideration than this note ever passed from plaintiffs to McKenzie for the excess in the mortgage above the actual indebtedness. Mr. Turnbull, now the attorney for plaintiffs, was then the attorney for Mr. McKenzie. This note was delivered to Mr. Turnbull, was never delivered to McKenzie, and, at the time of the trial, was still in Mr. Turnbull's possession. The mortgage was made out, signed, and dated January 2, and left with Mr. Turnbull. It was delivered to Mr. Greening January 4. Mr. Burton, defendants' agent, went to the city recorder's office about 4 o'clock p. m., just before commencing the attachment suit, and found no mortgage upon record. When Mr. Greening filed the mortgage, he learned that the attachment suit had been commenced, and immediately went to the store and took possession. The mortgage was filed between the issue and service of the writ. The sheriff obtained entrance to the store, and seized the property, and plaintiffs replevied it. It does not appear that the plaintiffs authorized this transaction, or had any knowledge of it whatever. It appears to have been conducted by Mr. Greening alone. Neither of the plaintiffs was sworn; but their ratification is to be inferred from the prosecution of this suit. When Mr. Canfield, the attorney for the defendants, asked Mr. Greening about the plaintiffs' claim under the mortgage, Mr. Greening stated that the amount of the debt was $7,800, and did not inform Mr. Canfield of the true state of the accounts. The amount of the mortgage substantially corresponds to the amount of the debts owed by McKenzie. He testified that it was expressly agreed that the mortgage should not be filed unless the defendants should take legal proceedings to collect their claim. The appraised value of the prop-

erty was $10,000. After plaintiffs secured possession under their writ of replevin, they immediately turned it over to McKenzie, who continued for some time to carry on the business as before. They never advanced him any more goods or money. Defendants recovered verdict and judgment for the amount of their claim.

This mortgage does not upon its face represent the true state of indebtedness between the parties. The law does not look with favor upon such mortgages. Honesty and fair dealing, and therefore the law, require that mortgages contain truthful statements. It is due to other creditors. The law will excuse honest mistakes, but will not excuse intentional misrepresentations, which naturally will mislead other creditors. *Willison v. Desenberg*, 41 Mich. 156. I refer to that case for language entirely appropriate to this.

The jury found, in answer to a special question, that this mortgage was given with intent to defraud other creditors of Mr. McKenzie. The evidence justified the verdict. It is very questionable whether the transaction did not amount to a fraud in law, so that the court would have been justified in directing a verdict for the defendants. *Diver v. McLaughlin*, 2 Wend. 596. The circuit judge, however, in a long and careful charge, left the entire question of fraud to the jury, who; by their verdict, have settled the question against the plaintiffs. It is unnecessary to review the instructions or the numerous requests on behalf of the plaintiffs which were refused. They include principles which are entirely familiar to the profession in this class of cases. The only portion of the instruction upon which any doubt can be raised is that wherein the judge said that the mortgage was the basis of plaintiffs' claim, and that the burden was upon them to establish the fact that it was taken in good faith, and not as a means of preventing other creditors from enforcing their claims. Where the mortgage represents the true

state of the indebtedness, and correctly sets forth the agreement between the parties, such instruction would be erroneous, because the burden of proof is usually upon him who alleges the fraud. But, where the mortgage is confessedly and intentionally false in its statements, the burden of proof is upon the mortgagee to show the *bona fides* of the transaction. There was a secret understanding between the mortgagor and the mortgagees, which was in direct conflict with the terms of the mortgage. Such an arrangement is a badge of fraud, and calls for explanation from those claiming under the instrument. The contention has often been made that mortgages given for a larger amount than the actual debt were fraudulent *per se.* But it has generally been held, and we think correctly, that they are not conclusive evidence of fraud, and are subject to explanation.[1] *Kaysing v. Hughes,* 64 Ill. 123; *Bell v. Prewitt,* 62 Id. 367; *Bush v. Bush,* 33 Kan. 566; *Tully v. Harloe,* 35 Cal. 302; *Minor v. Sheehan,* 30 Minn. 419; *Berry v. O'Connor,* 33 Id. 29. Nor need the mortgage necessarily show upon its face to have been given for future advances. Jones, Chat. Mortg. § 96, and authorities there cited. In *Tully v. Harloe* it is said:

"A mortgage which misrepresents the transaction between the mortgagor and mortgagee is liable to suspicion, and ought to be critically examined; but if, upon investigation, the real transaction turns out to be fair, and to have been had in good faith, it would be unjust to deprive the person claiming under it of his equitable rights. It is always better, however, for obvious reasons, that the mortgage should be drawn so as to show the true object and purpose of the transaction; for suspicion is engendered by misrepresentation, but disarmed by a statement of the truth."

The soundness of this rule is questioned by the supreme court of Wisconsin. *Stein v. Hermann,* 23 Wis. 132;

---

[1] See *Ferris v. McQueen,* 94 Mich. 367.

*Butts v. Peacock,* Id. 359. In the latter case, at page 360, will be found cited the authorities holding such mortgages void. In *Carter v. Rewey,* 62 Wis. 556, the court held that chattel mortgages may be given to secure future advances, "providing it appears on the face of the mortgage to be intended as a continuing security for such advances."

The authorities first above cited hold that under such circumstances an explanation is due. From whom is it due? Undoubtedly, from those within whose knowledge lie the explanatory facts; otherwise the opposite party would be compelled to call as witnesses hostile and interested parties. The plaintiffs' sole right to recover depends upon the validity of their mortgage. In *Haynes v. Leppig,* 40 Mich. 602, 605, this Court said:

"We think, when a controversy arises concerning a mortgagee's rights under a mortgage with any one interested in questioning it, that he is bound to prove the amount and conditions of his claim. Without this no one else can tell what his own rights are in the property or against it, and a mortgagee has no right to withhold such information. If he has rights, he has the means possessed by no other person of explaining them, and he is bound to explain them."

See, also, *Ferguson v. Gilbert,* 16 Ohio St. 88.

The rule that the burden of proof is upon him from whom an explanation is due, and who alone can explain the badges of fraud, is certainly founded upon common sense and reason. I think the charge of the court was correct.

The dealings between plaintiffs and McKenzie subsequent to the mortgage were competent evidence for the jury to consider in determining the question of fraud. Therefore, the facts that plaintiffs left McKenzie in charge to carry on the business as usual after they had seized the goods upon their mortgage, that they had neither advanced goods

nor paid him money upon the note, and other like circumstances, were admissible.

The judgment should be affirmed.