SLATTERY *v.* PARSONS.

1. Appeal and Error—Questions Reviewable—Burden of Proof—Fraud.

In suit by administrator of estate of deceased grantor, appointed upon petition of judgment creditor of deceased, to set aside conveyances of real property in Michigan and to account for purchase price of Florida property, where plaintiff failed to sustain its burden of showing fraud upon part of defendant grantee, it is unnecessary to review question as to laches of plaintiff and claim of error in exclusion of testimony by defendant because it related to matters equally within knowledge of deceased (3 Comp. Laws 1929, § 14219).

2. FRAUDULENT CONVEYANCES—BURDEN OF PROOF.

> In suit to set aside conveyance by one now deceased, alleged to have been in fraud of creditors, the burden of proof of showing that the conveyance was fraudulent was upon the plaintiff making the claim.

3. FRAUD—BURDEN OF PROOF.

> Fraud is never presumed, and the burden should never be imposed upon a party to show affirmatively that no fraud exists in a transaction.

. FRAUDULENT CONVEYANCES — JUDGMENT CREDITOR — BURDEN OF PROVING GOOD FAITH.

> Where a judgment creditor files a levy and proceeds by bill in aid of execution, the burden of proof, according to the statute, rests upon the judgment debtor to show that all transactions are in all respects bona fide (3 Comp. Laws 1929, § 14617).

5. SAME—DEBTOR'S PREFERENCE OF ONE CREDITOR OVER ANOTHER.

> A debtor can prefer one creditor to another, although, at the time of such preference, the debtor may be insolvent, and such preference will not be held fraudulent on that account.

6. SAME—CONSIDERATION—FRAUD—BURDEN OF PROOF—EVIDENCE— CONVEYANCE TO NIECE.

> Conveyances of property in this State and in Florida, including homestead of grantor, to his niece who had resided in his home for upwards of 20 years after she was 11 years of age and who advanced money for taxes, upkeep, funeral and other expenses far in excess of value of property conveyed, *held*, valid in suit for benefit of judgment creditor, because of failure to sustain burden of showing inadequacy of consideration or fraud, where it appears grantee did not know of judgment against grantor until several years after his death, which was about two years after recording of questioned conveyances.

Appeal from Wayne; Sample (George W.), J., presiding. Submitted January 7, 1942. (Docket No. 36, Calendar No. 41,828.) Decided April 6, 1942.

Bill by William J. Slattery, administrator of the estate of Alexander LaMarre, deceased, against Rosemary Parsons to set aside conveyances claimed to be a fraud on creditors. From decree rendered, defendant appeals. Reversed and bill dismissed.

*Ralph E. Routier,* for plaintiff.

*Devine, Kent & Devine,* for defendant.

CHANDLER, C. J.   The plaintiff herein on September 26, 1939, filed his bill of complaint to set aside two conveyances, dated July 24, 1931, from plaintiff's decedent, Alexander LaMarre, to Rosemary Parsons, defendant herein.   The property conveyed included a homestead in Detroit in which decedent had lived for many years, the deed for which was recorded on June 23, 1932, and a house and lot in Florida, the deed for which was recorded on November 3, 1931.

The trial court found that the conveyances were made to defraud a creditor, Coral Gables, Inc., a Florida corporation, but that a $1,500 statutory homestead interest was properly conveyed to defendant in accordance with our determination in *Drake* v. *Bissinger,* 294 Mich. 487, and *Walkinshaw* v. *Knox,* 226 Mich. 298, and decreed that defendant have a lien on said homestead of $1,500, which should be paid to her from the proceeds of a sale thereof.   It was further decreed that the defendant should account to the administrator for the full amount of the proceeds of the sale of the Florida property which she had sold in the spring of 1937 for $2,000, although $500 of the purchase price went to pay back taxes on this property.

The record shows that the decedent had accumulated a considerable amount of property prior to 1926 and 1927, the extent of which is not fully disclosed by the record, but estimates of some of the witnesses indicate it might have been of the approximate value of $40,000 to $60,000, most of which was in cash or personal property until he commenced investing in Florida real estate sometime in the early

1920's. He had no children and he and his wife lived in the Detroit property, described in the record, until her death in the year 1928, except during the winters which were largely spent in Florida. After the death of Mrs. LaMarre, decedent continued to live in the Detroit homestead until his death in February, 1934. Decedent apparently did not go to Florida after the death of his wife.

It appears from the record that in 1917 decedent's sister, the mother of defendant, and defendant, who then was about 11 years of age, became occupants of his home and lived there until the death of Mrs. Parsons in the year 1929, and that after that time the defendant continued to live with her uncle in the Detroit homestead, keeping house for him and giving him good care and attention.

In 1925, defendant secured a position with the Detroit board of education, which employment has continued to the present time. She at first received $90 per month and this was increased at the rate of $100 each year until she received the maximum salary of $165 per month. Defendant in 1930, upon her father's death, received upwards of $2,000 from a life insurance policy.

It clearly appears from the record that some years prior to 1927 the decedent became favorably impressed with Florida property in which he invested large sums of money; and that he withdrew his deposits from the Detroit banks and deposited his cash in Florida banks. Apparently many of his Florida investments were made through Coral Gables, Inc., the moving party in this litigation. In 1927, the Florida banks, in which decedent had deposited his money, failed, and as a result, all of the cash which decedent had was lost, and he then had nothing but the Florida house and lot involved in this litigation,

and the homestead in Detroit.  He never had employ-
ment after this time.  He was approximately 85
years of age at the time of his death in 1934.

The record discloses that between January 21,
1926, and November 16th of that year Mr. LaMarre
paid to Coral Gables, Inc., the sum of $10,151.30 and
that during the year 1927 between January 11th and
December 20th he paid the corporation $1,847.60,
making total payments to said corporation during
1926 and 1927 of approximately $12,000.

Coral Gables, Inc., in September, 1932, brought
suit against the decedent in the Wayne circuit court,
and in October, 1932, obtained a default judgment of
$2,048.54, plus costs of $20.95.

The record shows the value of the Detroit home-
stead to have been about $4,000 and the Florida prop-
erty about $2,000, and this was conveyed to defend-
ant more than a year prior to the institution of the
suit by the Florida corporation.  Both deeds were
recorded prior to the institution of said suit.

The record is convincing that the defendant never
had any knowledge of any indebtedness of her uncle
to Coral Gables, Inc., or any other indebtedness, at
the time of the execution of the deeds, her first in-
formation relative to such indebtedness being the
filing of the claim by Coral Gables, Inc., against the
estate of decedent some time in the year 1938.

In 1938, more than four years after the death of
Mr. LaMarre, Coral Gables, Inc., petitioned for the
appointment of plaintiff as administrator and filed
its judgment claim with the commissioners on claims,
which was allowed, and in 1939, more than five years
after the death of Mr. LaMarre, and practically eight
years after the conveyances to defendant and the re-
cording thereof, plaintiff filed this bill of complaint
to set aside the conveyances in order to satisfy the

payment of the creditor's claim which accrued in 1927, and which now approximates twice the amount of the original claim.

We find nothing in the record explanatory of the reason for this delay.

The plaintiff upon the trial introduced in evidence the report of the commissioners showing allowance of the claim, the fact that said claim was unsatisfied, the value of the premises at the time of the conveyance, and the fact that the estate was insolvent. There was no proof of fraudulent intent, and no proof of inadequacy of consideration, plaintiff insisting that the burden of proof was upon defendant to prove affirmatively a valid consideration.

The plaintiff called defendant as a witness, for cross-examination under the statute * for the purpose of showing by her the relationship between her and the decedent, the fact that she had lived in decedent's home since she was 11 years of age and was now in possession of the premises, and when the defendant by continuing the examination sought to show the agreement between her uncle and herself relative to these transfers, and to show not only a valid but an adequate consideration therefor by showing the amount of money she had advanced to her uncle and the amount expended by her in the upkeep of the premises, the payment of decedent's wife's funeral expenses and other obligations, plaintiff objected to such testimony as being incompetent under the statute barring evidence by the survivor. This testimony was received by the trial court over the objection of plaintiff, and was in effect taken upon a separate record, but was disregarded by the court in its findings of fact and conclusions of law. We are not determining that this evidence was not

* See 3 Comp. Laws 1929, § 14220 (Stat. Ann. § 27.915).— REPORTER.

properly excluded by the court in reaching its findings and conclusions.

There was, however, much competent evidence on the part of the defense in the form of statements by the decedent to the effect that he had lost all of his money prior to 1928, that he was dependent upon defendant for his support and maintenance, even for his cigar money, and no other reasonable inference can be drawn from the record than that the value of the services rendered by her, and the amounts advanced by her for taxes, upkeep of the property, funeral expenses and other expenses would be far in excess of the value of the property conveyed. But plaintiff contends that the relations of the parties were such that it was incumbent upon the defendant to show an express contract between herself and decedent to pay defendant for her services, advancements made by her to her uncle, and expenses incurred by her in maintaining the home and the upkeep of the property.

The trial court at the conclusion of the testimony determined that there was no competent evidence in the case establishing an antecedent indebtedness from decedent to defendant and that, therefore, the conveyances were invalid as against the claim of the plaintiff and were a fraud upon the creditor, except as to the extent of the homestead interest of decedent in the Detroit property. The court decreed that defendant must account for the purchase price of the Florida property which she sold in 1937, nearly two years before the institution of these proceedings, without deduction for the amount of taxes which she was required to pay out of the purchase price.

From the decree entered in favor of plaintiff, defendant appeals.

Defendant in her statement of questions involved contends: (1) that the burden of proving fraud was

upon the plaintiff; (2) that because of laches plaintiff should be denied the relief sought in his bill of complaint; (3) that the trial court erred in determining that the testimony of defendant as to matters equally within the knowledge of the deceased was incompetent, in view of the fact that the defendant was called as a witness for cross-examination by the plaintiff under the statute and examined on matters material to the issue which were equally within the knowledge of the deceased.

After a careful review of the record in this case, and having reviewed the record in *Mason* v. *Mason*, 296 Mich. 622, we find it unnecessary either to determine or discuss questions 2 and 3.

We find the facts in the instant case and those in *Mason* v. *Mason, supra,* as nearly identical as the facts in two separate cases could well be and that the legal propositions involved are identical, and shall, therefore, quote quite extensively from the *Mason Case*.

In that case, the decedent, Mr. Schulz, eight days before his death, conveyed to his three daughters, one of whom was the wife of Dr. Mason, his homestead in the city of Saginaw of the value of approximately $5,000, reserving to himself the life use of said property. Mr. Schulz at that time was indebted to the receiver of the American State Bank of Saginaw on a bank assessment in the approximate amount of $3,000. It was contended by the defendants, daughters of the decedent, that Mr. Schulz was indebted to Dr. Mason, husband of one of the daughters, in the sum of approximately $19,000, most of which was for living expenses paid by Dr. Mason for Mr. Schulz from the year 1921 down to the time of his death in 1936 (Dr. Mason and his wife lived with decedent in his home), and that Dr. Mason consented that the indebtedness from Mr. Schulz to him

should be paid by the conveyance from Mr. Schulz to his three daughters of the property in question. It was contended by the plaintiff, administrator of the Schulz estate, that there was no evidence that could be said to prove that Mr. Schulz and Dr. Mason agreed that the indebtedness in question should be or was liquidated by the conveyance, and that the record did not reveal that Dr. Mason accepted the execution of the conveyance in discharge of his debt. In that case we said:

"On a careful review of the record we agree with this contention. None of the daughters could testify in the case on their own behalf, because they were opposite parties within the prohibition of the statute excluding evidence by the survivor. 3 Comp. Laws 1929, § 14219 (Stat. Ann. § 27.914). Dr. Mason's testimony was objected to on the same ground; and the evidence of George Schulz, a son of the deceased, could not be said to establish sufficiently the fact that there was an agreement to cancel the indebtedness.

"But we are persuaded that the burden of proof of showing that the conveyance was fraudulent was upon the plaintiff making such claim. Assuming that it was shown that the conveyance rendered Mr. Schulz insolvent, can it be said that the plaintiff established fraud? Under the uniform fraudulent conveyance act (3 Comp. Laws 1929, § 13392 *et seq.* [Stat. Ann. § 26.881 *et seq.*]), it is provided:

" 'Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration.' 3 Comp. Laws 1929, § 13395 (Stat. Ann. § 26.884).

" 'Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud

either present or future creditors, is fraudulent as to both present and future creditors.' 3 Comp. Laws 1929, § 13398 (Stat. Ann. § 26.887).

"In 27 C. J. p. 798, it is said:

" 'The rule in many jurisdictions is that a creditor whose debt existed at the time of a conveyance by his debtor purporting to be based on a valuable consideration has the burden of proving that the recitals of consideration in the deed are false; and this rule also applies where the conveyance was to pay or secure a preexisting debt.'

"While the rule is different in some jurisdictions (C. J., *supra*), in this State, where a sale of property is attacked as fraudulent as to creditors, the burden of proof is on the attacking party to establish such fraud. *Kipp* v. *Lamoreaux,* 81 Mich. 299.

"In *Brace* v. *Berdan,* 104 Mich. 356, 359, 360, the court said:

" 'I also think it was error to charge the jury that the burden was upon the plaintiffs to negative fraud in the transaction. Fraud is never presumed, and the burden should never be imposed upon a party to show affirmatively that no fraud exists in a transaction. While the fact that the mortgage was given for a greater sum than the amount due is a circumstance which may be taken into consideration by the jury, and while admittedly, if it is made for a greater amount than the indebtedness owing, for the purpose of hindering or delaying creditors, it amounts to fraud in law, yet I do not understand that the burden of proof shifts. Such seems not to have been the view of the circuit judge, but he states that the burden of proof is upon the plaintiffs in the case, "they deriving their right and their claim through the mortgage." I think it is not the rule of law that a person deriving his claim through an instrument of conveyance or a security has the burden of proof to show that the instrument is not fraudulent.'

"It should be remarked that the rule is different where a judgment creditor files a levy and pro-

ceeds by bill in aid of execution, the burden of proof in such case, according to the statute, being upon the judgment debtor to show that all transactions are in all respects *bona fide*. 3 Comp. Laws 1929, § 14617 (Stat. Ann. § 27.1581).

"There is no question that in this State a debtor can prefer one creditor to another, although, at the time of such preference, the debtor may be insolvent; but such preference will not be held fraudulent on that account. *Bankers Trust Co.* v. *Humber,* 263 Mich. 426.

"We are of the opinion that in this case the burden was upon the plaintiff to show inadequate consideration for the deed, and that because of failure to carry this burden, the trial court was correct in its determination.

"It seems pertinent to remark that in this case, from our examination of the record, we find no indicia of fraud, and for that reason suggest none of the various inferences that might be drawn, or presumptions that might be otherwise indulged."

We can well determine the issue here involved by paraphrasing what we said in the *Mason Case* on pp. 628, 629.

There was no evasion or concealment of the transaction between Mr. LaMarre and defendant. There was no indicia of fraud or bad faith. The only one who knew exactly what was the understanding was the defendant, who was not permitted to testify on her own behalf, but who was available to the plaintiff as a witness for the purpose of inquiring into the question of consideration, and of whom the plaintiff did not see fit to inquire for the purpose of showing inadequacy of consideration.

There were not circumstances in this case which placed the burden of proof or the burden of proceeding with the evidence upon the defendant to show that the conveyances were not fraudulent and were based upon adequate consideration. The bur-

den of proving fraud was upon plaintiff, and failing in this he did not establish his claim.

The opinion in the *Mason Case, supra,* is determinative of the question here discussed

The decree entered in the court below is reversed and one shall be entered dismissing plaintiff's bill of complaint.

Appellant may recover costs.

BOYLES, NORTH, STARR, BUTZEL, BUSHNELL, and SHARPE, JJ., concurred. WIEST, J., did not sit.