# CHARLESTON.

## M. J. SIMMS v. W. H. RAMSEY *et als.*

Submitted October 31, 1916.   Decided November 21, 1916.

1. MORTGAGES—*Deeds of Trust—Consideration.*

An existing indebtedness in any form, a verbal agreement to make future advancements in any form, or a verbal agreement to become surety or indorser, in consideration of the indemnity to be afforded by it, constitutes a valid and sufficient basis for a mortgage or deed of trust for a definite and specific sum, purporting to be an absolute debt, and all three of such purposes may be so included in a single mortgage or deed of trust. (p. 271).

2. SAME—*Deeds of Trust—Validity.*

Under such an instrument, payments to third persons by the mortgagee, at the request of the mortgagor, are valid advancements and come within the security afforded by it. (p. 272)..

3. SAME—*Construction—Debts.*

Under such an instrument purporting to secure a debt due to. the mortgagees jointly, debts due to them, and advancements, endorsements and suretyship and guaranty undertakings made by them, individually, come within the security and indemnity afforded. (p. 272).

4.  SAME—*Construction—Security*.

Though broad and flexible, the doctrine of lien security by mort-
gages and deeds of trust does not confer any right, protection or
security upon a stranger to the instrument creating the lien, unless
he has acquired it wholly or partially, in some lawful way, or has
obtained the equitable right of subrogation to the benefit thereof.
(p. 272).

5.  SAME—*Construction—Liens*.

A debt due to a corporation, practically all of the capital stock
of which belongs to the beneficiaries of the deed of trust, but
which they have not paid nor become personally liable for, is not
within the security and protection thereof.   (p. 272).

6.  SAME—*Construction—Debts*.

But debts of the grantor for which such beneficiaries have be-
come liable as endorsers or sureties and which have been paid by
such corporation, are within the indemnity of the deed of trust,
and should be decreed to the corporation, in exoneration of the
beneficiaries from liability, and so are unpaid debts of the grantor
for which they are so liable and they should be decreed to the
parties entitled thereto.   (p. 272).

7.  SAME—*Foreclosure—Review—Remand*.

If a decree in a suit to enforce judgment and trust deed liens
is found, on appellate review thereof, to be erroneous in its ascer-
tainment and adjustment of the liens on certain property, and it
is necessary to bring in new parties, to the end that decrees may
be entered in their favor, the entire decree, in so far as it affects
such property will be reversed and the cause will be remanded for
amendment as to parties and for a proper decree.   (p. 272).

8.  FRAUDULENT CONVEYANCES—*Limitation of Actions—Running of
    Statutes—Exceptions*.

The limitation on suits to have deeds and other instruments de-
clared void in so far as they create preference of creditors, pre-
scribed by sec. 2 of ch. 74 of the Code, is absolute and devoid of
exceptions other than those therein provided.   (p. 272).

Appeal from Circuit Court, Fayette County.

Suit by M. J. Simms and others against W. H. Ramsey
and others.   From the decree, plaintiffs appeal.

*Reversed in part, and remanded.*

*R. T. Hubard, Jr., L. B. O'Neal, J. W. Eary* and *Dillon
& Nuckolls,* for appellants.

*Osenton & Horan,* for appellees.

POFFENBARGER, JUDGE:

This appeal taken by judgment lien creditors involves primarily a question of priority of liens, turning on the status of a deed of trust which, on its face, purports to secure the payment of four negotiable promissory notes for the sum of $2,500.00 each.

The notes described in the deed of trust, payable to the order of J. P. Chapman and W. E. Deegans, at the Kanawha Valley Bank, Charleston, W. Va., were made and delivered to the payees thereof by W. H. Ramsey, the judgment debtor. but he was not, at the date of the execution thereof, indebted to Chapman and Deegans in the sum of $10,000.00, the aggregate of the four notes, nor did they give in exchange therefor, money or property of that amount or value, or any other. Nor were any of the notes ever negotiated. Deeming the deed of trust, duly admitted to record, and the notes sufficient for their protection in the execution of a verbal contract or agreement between them and Ramsey, constituting the substantial, if not the sole, consideration of the notes and deed of trust, they simply held the former and caused certain things to be done which, they claim, amounted to performance of the oral agreement and brought certain large sums of money within the security and protection of the deed of trust. Some of the sums so claimed, aggregating $2,142.14, were allowed by the commissioner, and others, amounting to more than $8,000.00, disallowed.

One ground of resistance of the claims of Chapman and Deegans, is that they were not due and owing to them in their individual capacity, nor, in a legal sense, at all, but to a corporation, the Fayette Liquor Company, practically all of the stock of which was held by Chapman and Deegans. At the date of the execution of the notes and deed of trust, Ramsey was indebted to the corporation in divers sums amounting in the aggregate to $3,692.42. After the date of the execution thereof, he became indebted to it in other large sums. Still others for which Chapman and Deegans may have been bound, the former as to some and the latter as to othters, were paid by it. In addition to this, Chapman and Deegans claim $2,034.52, on account of indebtedness of W.

L. Ramsey, not the debtor in the deed of trust, but his son. This sum is made up of three different items, a balance due from W. L. Ramsey of $719.52, on account of his notes paid; judgment debts against him in favor of the Winona National Bank, for $650.00, not paid; and notes of his to the National Bank of Thurmond for $665.00, on which Chapman is liable as endorser.

. The basis of these claims is an alleged provision of the oral agreement, binding Chapman and Deegans to pay notes and debts of W. L. Ramsey for which W. H. Ramsey was bound. The commissioner disallowed these three items because he thought there was no proof of endorsement of any of the alleged notes by W. H. Ramsey. No such notes have been produced or filed. They claim also $1,300.00, on account of a note executed by W. H. Ramsey, endorsed by Chapman and payable to the Ansted National Bank, in lieu of others of Ramsey's notes, on which Chapman and Deegans, or one of them, was endorser; a note for $400.00 executed by Ramsey to A. S. Russell and payable to the Ansted National Bank; and a judgment against W. H. Ramsey, Chapman and Deegans for $320.30. These three items make up the amount allowed by the commissioner.

Chapman claims that, at the date of the execution of the deed of trust, he was surety for Ramsey in two forthcoming bonds, one taken on an execution in favor of the Quinnimont Coal Co., for slightly more than $2,000.00 and the other on an execution in favor of the Charleston Milling and Produce Co., for about $800.00, including interest and costs. Though he promised, in his deposition, to file these bonds and the checks showing payments of the amounts due on the executions, he filed only the latter of the two bonds, and some checks of the Fayette Liquor Company payable to the sheriff of the county, one of which for $500.00 bears this memorandum: "W. H. Ramsey, Quin. C. Co. Judgment." This, with another payable to the sheriff, makes up $2,234.27, the alleged amount of the Quinnimont Coal Co. judgment. Other checks of the Fayette Liquor Co. payable to the sheriff amount to $1,525.01, a sum nearly double the amount of the Charleston Milling and Produce Co. execution. The residue went to

discharge judgments in favor of the National City Bank for $315.81, and costs, A. Janutolo for $201.29 and costs and the Winona National Bank for $114.66 and costs and $103.32 and costs. Whether either Chapman or Deegans was in any way liable for any of these judgments other than those in favor of the Quinnimont Coal Co. and the Charleston Milling and Produce Co., does not appear. Chapman thinks he was surety in a forthcoming bond, other than the two here mentioned, but he does not specify it, wherefore the claim as to it fails for want of proof. Two unpaid judgments apparently in favor of the Winona National Bank, were taken against Chapman, W. H. Ramsey, L. G. Kincaid and W. L. Ramsey, on notes of the latter, endorsed by his codefendants therein.

To the allowance so made, M. J. Simms who, as surety for Ramsey, had paid a judgment against himself and Ramsey in favor of the Montgomery National Bank for the sum of $1,031.67, and claims the benefit of the lien thereof by subrogation, the Merchants National Bank of Indianapolis, Ind., having a judgment for $754.57, A. Janutolo holding a judgment for $137.32, W. A. Anderson, a judgment creditor in the sum of $186.12, and the Fayette Bottling and Ice Co., a judgment creditor in the sum of $1,126.61, excepted, notwithstanding their judgments are subsequent to the date of the deed of trust. To the disallowance of the larger portion of the amount claimed by them, Chapman and Deegans excepted. The court overruled the exceptions of the judgment creditors, attacking the allowance made under the deed of trust, and, in large measure, sustained the exceptions of Chapman and Deegans. The aggregate of their claims was $11,574.53, while the aggregate amount of the notes secured by the deed of trust and the interest thereon, at the date of the decree, was $10,968.28. Deeming the notes security for their claims to the extent of the principal sums represented by them and the interest thereon, the court limited their allowance to the aggregate of said principal sums and interest.

If the payee and holders of the notes had jointly paid debts of the grantor in the deed of trust, whether liable therefor as endorsers or otherwise, on the faith of an oral agreement to do so, constituting the consideration of the notes or basis of

the lien given them, that trust deed and notes would stand as security for the money so paid by them. An existing indebtedness in any form or a verbal agreement to make future advancements in any form, constitutes a valid basis of a mortgage for a specific sum, such as the notes here involved represent, and the lien thereof for advancements made under it is good against subsequent liens, in the absence of actual notice thereof before the advancements are made. *Du Bois* v. *First Nat. Bank,* 43 Col. 400; *Bishop & al.* v. *Warner & al.,* 19 Conn. 460; *Gardner* v. *Webber,* 34 Mass. 407; *Adams* v. *Smedley,* 38 L. R. A. (Mich.) 490; *McKinster* v. *Babcock,* 26 N. Y. 378; *Reeves* v. *Evens,* 34 Atl. Rep. (N. J.) 477; *Dunn's Trustee* v. *McAlpin & Co.,* 90 Ky. 78; *Corey* v. *Jackson Probate Judge,* 56 Mich. 524; *Showman* v. *Lee,* 86 Mich. 556; *Brace* v. *Berdan,* 104 Mich. 356; *Tapia* v. *Demartini,* 77 Cal. 383; *Huntington* v. *Kneeland,* 102 Hun. (N. Y.) 284.

By the great weight of modern authority, advancements made after actual notice of a subsequent purchase or incumbrance are not protected or secured by the mortgage as against a subsequent purchaser or incumbrancer. Jones, Mortg., sec. 368; *Frey* v. *Bank,* 11 Ill. 367; *Hughes* v. *Worley,* 1 Bibb. (Ky.), 200; *Bell* v. *Fleming,* 12 N. J. Eq. 490; *Hall* v. *Crouse,* 13 Hun. (N. Y.) 557; *Todd* v. *Outlaw,* 79 N. C. 235; *Spader* v. *Lawler,* 17 Ohio 371. But the notice must be actual. Recordation of the subsequent conveyance or lien is not constructive notice to the prior mortgagee making advancements, under his mortgage. Jones, Mortg. Sec. 372. As to this, however, the author correctly says the authorities are not uniform.

Under such a mortgage, advances may be validly made to third persons, at the request of the mortgagor. *Maffitt's Admr.* v. *Rynd,* 69 Pa. St. 380; *Lyle* v. *Duncomb,* 5 Binn. 585; *Irwin* v. *Tabb,* 17 S. & R., 419; *Garber* v. *Henry,* 6 Watts 57. Hence it was not necessary to the protection of such advancements or payments as Chapman and Deegans may have made that they should have been made directly to Ramsey.

As the notes were payable jointly to Chapman and Deegans.

and they have set up claims for amounts due them individual-
ly, it becomes necessary to inquire whether individual debts
or advancements are within the protection and security of a
lien given to secure debts and advancements ostensibly due
to, or to be made by, the lienors jointly. The scant or meager
authority to be found, bearing on this question, is not en-
tirely satisfactory, but it seems to respond affirmatively. "A
mortgage to several persons jointly may be made to cover
separate debts." *Adams* v. *Nieman & Jochen,* 46 Mich. 135.
After foreclosure of a mortgage, the mortgagees become ten-
ants in common. *Goodwin* v. *Richardson,* 11 Mass. 469. If
two men jointly and equally advanced a sum of money on a
mortgage and took that security to them and their heirs,
there was no survivorship at common law. *Rigden* v. *Vallier,*
2 Ves. Sen. 258. If two men equally lend money on a mort-
gage, though made to them jointly, they are tenants in com-
mon. 2 Dane's Abr., 226, sec. 2. Though these technical re-
finements do not fully and satisfactorily demonstrate the
affirmative of the proposition, they are in harmony with the
meritorious results of its operation. Neither the mortgagor
nor his alienees and creditors have any substantial interest
in the relation subsisting between the mortgagees, who have a
lien for a definite and fixed sum of money, made matter of
record and so disclosed to public view, inspection and inquiry.
The proportion in which the security belongs to them, or is
divided between them, is really a matter of no concern to
anybody but themselves. The recorded lien need not, as
has been shown, descend into particulars of description, nor
need the description given or statement of purpose made, be
strictly accurate. If the instrument is valid on its face, it
may stand as security for the equitable rights of the parties
to whom it was executed. *Riggs* v. *Armstrong,* 23 W. Va. 760.

Closely related to a mortgage to secure future advance-
ments is one to indemnify sureties and endorsers, and the
same general principles govern both, as to the form and
sufficiency of the security. One of the latter class need not,
in terms, disclose its real character and purpose. Parol evi-
dence is admissibe to reveal and define them. "A mortgage
given for a definite sum, without specifying the liabilities

secured, may be shown by parol evidence to have been given
to indemnify the mortgagee against his liability as an in-
dorser or surety for the mortgagor.'' Jones, Mortg., sec.
379; *Shirras* v. *Craig,* 7 Cranch (U. S.) 34; *Lawrence* v.
*Tucker,* 23 How. (U. S.) 14; *McKinster* v. *Babcock,* 26 N. Y.
378. Other decisions to the same effect will be found among
the cases hereinbefore cited for the law applicable to mort-
gages to secure future advancements.

Manifestly all three purposes may be combined in one and
the same mortgage or deed of trust. The parties may find it
expedient and desirable to secure a present debt and future
advancements and also to indemnify against liability or loss
by reason of endorsments, suretyships and guaranties. To
require separate instruments for these three purposes would
merely impose useless formality not required by any law
either common or statutory. It seems necessarily to follow,
also, that a mortgage or deed of trust securing a note or
notes for a definite amount may be shown by parol evidence
to have been given for any one or more of the three purposes
for which such instruments are executed.

Though so broad, flexible and helpful to those in need of
it, lenders of money and credit, for their protection, and
borrowers, for assistance in their multitudinous enterprises,
the doctrine of lien security by mortgages and deeds of trust,
does not confer any rights, protection or security upon a
stranger to the instrument creating the lien, unless he has
acquired it, in whole or in part, in some lawful manner, or
has in some way obtained the equitable right of subrogation
to the benefit thereof. All claimants, to be entertained, must
come within the terms of the designating language of the
instrument, liberally interpreted, if necessary, or have, in
some way, a right of succession to the rights of persons indi-
cated by such terms. The decisions reveal no exception to
this rule and its soundness is self-evident. To say a total
stranger to a mortgage may have the benefit of it would be
absurd.

Viewed in the light of these principles and conclusions, the
decree complained of is obviously erroneous, in so far as it
extends the benefit of the lien to debts due from Ramsey to

the Fayette Liquor Company, which have not undergone any change in point of status, since the deed of trust was executed. That company was an artificial person in law, having an existence, capacity and power, wholly separate and distinct from the existence, capacity and powers of its stockholders. Though Chapman and Deegans held nearly all of its capital stock they were not the corporation. Its property rights and obligations were not legally nor equitably theirs. They had property interests in the corporation and equitable rights against the corporation, but they were not the owners of its property nor personally liable for its debts. Hence, the debts due it from Ramsey were as foreign to the deed of trust as if they had been debts due to any other stranger to the instrument. If Chapman and Deegans or one of them had paid the debts due it, their payments might have been treated as advancements made within the scope and purpose of the deed of trust. But they do not claim to have paid them. To the extent of $3,692.42, they stand just as they did on the day of execution of the deed of trust. Nor can any money subsequently paid by the corporation to Ramsey, or to others for him, not in discharge of Ramsey's debts for which Chapman and Deegans or one of them was liable, be allowed. As to none of the sums so paid, either before or after the execution of the deed of trust, is there a suggestion of the relation of debtor and creditor between Chapman and Deegans, on the one hand, and the corporation, on the other, so as to afford a basis for the claim of such relation between the former and Ramsey. Although they say they made the payments, the irrefutable fact is that they were made by checks of the corporation. As managers of the corporation, they no doubt caused it to pay, but how? As managers, making the transaction a corporate one, or as strangers, making themselves debtors to the corporation? All the testimony indicates that they deemed themselves and the corporation to be one firm or concern and thus made the payments out of corporate funds. Nowhere in the evidence is there a suggestion that, at the date of the execution of the trust deed, these sums were considered or treated as debts due to Chapman and Deegans personally. Ramsey says he executed the trust

deed and notes to enable Chapman to discount the latter and "protect himself for some of these notes of mine on which he was endorser" and "to protect himself for my paper that I couldn't take care of, that he paid." Chapman says: "The notes were executed to cover debts that we had paid for Mr. Ramsey and to secure us for obligations we had assumed for he and his son and to pay other indebtedness of his as far as we could." In this, there may have been an assumption that the money paid by the corporation was paid by the individual stockholders thereof, but, if so, it was an erroneous assumption, not altering the fact. The rules governing the application of the security to its subject matter are liberal, but they cannot be allowed to bring in a subject by supplying a wholly wanting and non-existent link.

Enough has been stated to make it obvious that payments of any of W. H. Ramsey's debts and debts of his son for which he was liable, by Chapman and Deegans, or either of them, are protected by the deed of trust. According to the finding of the commissioner, they paid debts of W. H. Ramsey, including costs and interest to the date of his report, amounting to $2,142.14, and no error in this conclusion is perceived. This sum was properly held to be a lien under the trust deed. Although Chapman claims to have paid some notes of W. L. Ramsey's, endorsed by W. H. Ramsey, he has not produced them, and the commissioner has found against him as to the item of $719.52, based on that claim. The court seems not to have disturbed this finding, but it decreed the item and two others, making it all $2,034.52, to Chapman and Deegans as an unsecured debt against W. H. Ramsey. This part of the decree no doubt stands upon the pleadings and evidence between them, and implies lack of right in Chapman and Deegans, respecting these sums, as against the contesting lien creditors.

The liability of Chapman on the forthcoming bonds given on the executions in favor of the Quinnimont Coal Co. and the Charleston Milling and Produce Co. are within the indemnity of the deed of trust, and so are the two judgments in favor of the Winona National Bank against W. L. Ramsey, W. H. Ramsey, L. G. Kincade and J. P. Chapman, on notes

of W. L. Ramsey, endorsed by the other parties. The amounts thereof should be adjudged to be liens under the deed of trust and decreed · directly to the bank, it being a party to the suit, in exoneration of Chapman from liability by reason of his endorsements. These two judgments seem to have been taken on the notes constituting the $650.00 item of the claim of $2,034.52, above mentioned. The notes of W. L. Ramsey, endorsed by Chapman, held by the National Bank of Thurmond and amounting to $665.00, are also within the indemnity.

The last mentioned sum should be decreed directly to the National Bank of Thurmond and the amounts paid by the Fayette Liquor Company, on account of the executions in favor of the Quinnimont Coal Co. and the Charleston Milling and Produce Co., should be decreed to the Fayette Liquor· Co. Chapman is entitled to be relieved from liability as to these sums and the decree should put them into the hands of the parties to whom they belong. *Burlew, Adm'r.* v. *Smith et als.*, 68 W. Va. 458.

The indemnity may have been one against liability, not mere loss, because it conferred right and power to discount the notes and pay the debts and thus prevent loss or injury to Chapman and Deegans as endorsers and sureties. As to this we enter upon no inquiry, however, for it is the common and ordinary practice in equity, to decree payment by the principal debtor to the creditor, in exoneration of the surety from liability, and to apply securities to payment of the debt, when there are any, for the same purpose.

Neither the National Bank of Thurmond nor the Fayette Liquor Co. is a party to the suit, but they should be brought in and made parties for the purposes above stated. The latter corporation appears to have been dissolved, and to have surrendered its charter, but the statute keeps it alive for the purpose of winding up its business. Code, ch. 53, secs. 57, 59; *Billmyer Lumber Co.* v. *Merchants Coal Co.*, 66 W. Va. 696.

The court below properly overruled the contention that the character of the trust deed took it out of the statute limiting attack upon recorded deeds of trust and other lien securities,

on the ground of unlawful preference of creditors. That limitation is four months and had expired when the bill was filed. The statutory saving or exception relied upon appears in the general statute of limitation, ch. 104 of the Code, and is limited to rights of action mentioned in that chapter. The limitation invoked here is imposed by sec. 2 of ch. 74 of the Code, inhibiting the creation of preferences by insolvent debtors, a right not mentioned in the other chapter, and contains no such saving or exception as is made in ch. 104, nor any other. It must be assumed that the legislature fully expressed its intention respecting the matter, and we would not be warranted in extending the terms of the statute. To say the legislature intended an extension of the four months period, in those instances in which the instrument does not fully disclose its purpose on its face, would be an assertion of a mere guess or probability, not a necessary implication arising out of the terms of the statute or its object and purpose.

If the bill could be interpreted as containing an attack upon the deed of trust, on the ground of fraud, there is no proof of fraudulent intent.

Errors in the decree in favor of Chapman and Deegans and to the detriment of the appellants and lack of necessary parties clearly appear from the principles and conclusions stated. But for the necessity of the introduction of new parties, the decree might be modified here so as to make it conform to the conclusions here expressed. Neither here nor in the court below, can anything be decreed to strangers to the suit. *Dudley* v. *Barrett,* 66 W. Va. 363; *Snider* v. *Brown,* 3 W. Va. 143; *Bailey's Adm'r.* v. *Robinson,* 1 Gratt. 4. The amounts to be decreed to them enter into the questions of dignity and priority of liens, common to all the claimants of liens on the land and property mentioned, described and conveyed by the deed of trust executed by W. H. Ramsey to C. W. Osenton, Trustee. It would be unusual to remand a cause for modification of a decree appealed from. In view of the anomalous situation thus presented, it is deemed proper to reverse the decree in so far as it pertains to or effects the lands and property conveyed by said deed

of trust and remand the cause for the introduction of new parties, the Fayette Liquor Company and the National Bank of Thurmond, and for entry of a new decree, upon the coming in of said parties, in conformity with the principles and conclusions here stated, and it will be so ordered and decreed.

*Reversed in part, and remanded.*